UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

GREENBUSH BREWING CO., a Michigan
Corporation, MICHIGAN CIDER
ASSOCIATION, a Michigan Nonprofit
Corporation, FARMHAUS CIDER CO., a
Michigan Corporation and VANDER MILL, LLC,
a Michigan Limited Liability Company,

Honorable:

Case No:  1:19-cv-536

      Plaintiffs,

v

MICHIGAN LIQUOR CONTROL
COMMISSION, ANDREW J. DELONEY,
Chairman, in his official Capacity; KURT COX
Grand Rapids District Supervisor, in his official
capacity and JON REEDER, Regulation Agent and
Investigator, in his official capacity,

      Defendants.

---

MILLER, CANFIELD, PADDOCK
AND STONE, PLC
Joseph M. Infante (P68719)
Christopher J. Gartman (P83286)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI  49503
(616) 776-6333
infante@millercanfield.com
gartman@millercanfield.com

---

## **COMPLAINT**

NOW COMES the Plaintiffs, GREENBUSH BREWING CO, MICHIGAN CIDER ASSOCIATION, and VANDER MILL, LLC, by and through their attorneys, MILLER, CANFIELD, PADDOCK and STONE, P.L.C., and for its Complaint against Defendants, MICHIGAN LIQUOR CONTROL COMMISSION, KURT COX and JON REEDER, state as follows:

## JURISDICTION AND VENUE

1. This case arises under 26 U.S.C. § 5362; 26 U.S.C. § 5556; 27 C.F.R. § 24.101; 27 C.F.R. § 24.103; 27 C.F.R. § 24.105; 27 C.F.R. § 24.309; and the Fourth, Fourteenth and Twenty-first Amendments to the Constitution of the United States.

2. This Court has original jurisdiction under the provisions of 28 U.S.C. §1331.

3. Greenbush Brewing Co. ("Greenbush") is a Michigan corporation with its principal place of business in Berrien County, located in the Western District of Michigan.

4. Michigan Cider Association ("MCA") is a Michigan domestic nonprofit corporation with its registered place of business in Kent County, located within the Western District of Michigan.

5. Farmhaus Cider Co. ("Farmhaus") is a Michigan Corporation with its principal place of business located in Ottawa County, located in the Western District of Michigan.

6. Vander Mill, LLC ("Vander Mill") is a Michigan Limited Liability Company with its principal place of business located in Kent County, located in the Western District of Michigan.

7. Venue is proper as the Defendant Michigan Liquor Control Commission ("MLCC") maintains its principal office in Ingham County, a substantial part of the events or omissions giving rise to the claim occurred in the County of Berrien, State of Michigan, and Defendant is subject to personal jurisdiction in this judicial district. Further, Defendants Kurt Cox and Jon Reeder work from MLCC's Grand Rapids office located in Kent County, within the Western District of Michigan.

## HISTORY OF RELEVANT ALCOHOL STATUTES AND REGULATIONS

8. The Michigan Liquor Control Code (the "Code") was first enacted in 1933, consisting of only 20 pages. Exhibit A.

9. By 1948 the Code was nearly 100 pages long containing a comprehensive set of rules governing the "Manufacture, Importation, Transportation, Standards of Identity and Quality, Labeling, Possession and Sale of Wine."  Exhibit B.

10. The 1948 Code contained defines a "Manufacturer or Maker" of wine as "any winery which makes not less than 51% of their own wines by crushing the grapes or other materials, fermenting the must and clarifying the resulting wines."  See exhibit B at R 436.311.

11. The 1948 Code also contained provisions governing the manufacture of wine, including regulations related to equipment requirements, restrictions on amelioration, sweetening, blending, filtering, standards of identity, allowed fruits, bottling, labeling and inspections among other rules.  Exhibit B, Article IV Wine Manufacture, R 436.314 to 436.324.

12. Article V of the 1948 Code included numerous rules on how wines could be labeled and the required and prohibited information on those labels.  Exhibit B.

13. On August 16, 1954, the Internal Revenue Code was enacted.  26 USC Title 26.

14. Thereafter, on September 2, 1958, Subtitle E "Alcohol, Tobacco and Certain Other Excise Taxes" was added to the Internal Revenue Code.

15. The Secretary of the Treasury was given the authority to enact regulations to enforce Subtitle E of the Internal Revenue Code.  26 U.S.C. § 5556.

16. Today, those regulations, as they relate to wine, are contained in Title 27 C.F.R. Part 24 which includes sections 24.1 to 24.332.

17. Title 27 C.F.R. Part 24 is a comprehensive regulatory scheme which regulates, among other areas, the manufacturing, transfer and labeling of wine.

18. Following the enactment of the Internal Revenue Code in 1954 and Subtitle E in 1958, the Michigan Liquor Control Code was amended to cede regulation and enforcement of the manufacture and labeling of alcohol, including wine, to the federal government.

19.     Specifically, effective September 1, 1970, Rule 436.1749 rescinded "Rules entitled 'Manufacture, Importation, Transportation, Standards of Identity and Quality, Labeling, Possession and Sale of Wines,' being R 436.251 to 436.422 of the Michigan Administrative Code."  Exhibit C.

20.     In addition, Rule 436.1708, "Federal manufacturing regulations and prohibited sales," was adopted, stating that "[w]ine shall be manufactured in accordance with the Federal wine regulations published in Title 26, Code of Federal Regulations, 1954, as amended."  Exhibit C.

21.     Thereafter, in the 1975 Annual Supplement to the Code, Rule 436.1708 was amended to make clear the scope of the applicable federal laws and that those laws were incorporated by reference:  "Wine shall be manufactured pursuant to the federal wine regulations publish in Title 26, Part 240, Subparts F, O, P, Q, R, S, T, U, V, W, X, Y, Z, UU, VV, XX, YY, and ZZ, Code of Federal Regulations, 1954, as amended, as of June 1, 1975, which are incorporated herein by reference."  Exhibit D.

22.     Today, Rule 436.1708 is still in place and contains similar language, but specifically cites to the provision of 27 CFR Part 24 and adopts those regulations by reference: "A manufacturer shall manufacture wine under the federal wine regulations published in 27 C.F.R. part 24, §§24.1 to 24.323 (2014) that are adopted in these rules by reference."

23.     Since the change occurred in 1970, Michigan wineries have freely engaged in bonded transfers of wine.

24.     Defendant MLCC has historically been aware of these transactions.

25.     In many instances these transactions were disclosed to MLCC through various forms and tax filings.

26. As a result of these bonded transfers, Michigan's wine industry grew to one of the largest in the country, with Michigan wineries investing heavily over the years in their operations.

27. However, in early 2018, the enforcement division of Defendant MLCC took the position that bonded transfers of wine were illegal and began seizing wine received through bonded transfers and issuing violations.

28. This position of the enforcement division was not shared by the all commissioners of Defendant MLCC.

29. Defendant MLCC's position change has caused damage throughout Michigan's wine industry, which includes cideries, as there is uncertainty now in the law and many bonded transfers have stopped occurring.

30. Despite ceding to the federal government the authority to regulate the manufacture of wine, on December 18, 2018, MCL 436.1109 was amended to include a definition of "manufacture" which is inconsistent with federal law and conflicts with the C.F.R. sections adopted into the Code. That new definition states: "'Manufacture' means to distill, rectify, ferment, brew, make, produce, filter, mix, concoct, process, or blend an alcoholic liquor or to complete a portion of 1 or more of these activities. Manufacture does not include bottling or the mixing or other preparation of drinks for serving by those persons authorized under this act to serve alcoholic liquor for consumption on the licensed premises. In addition, manufacture does not include attaching a label to a shiner. All containers or packages of alcoholic liquor must state clearly the name, city, and state of the bottler."

31. Also added on December 18, 2018, was MCL 436.1204a which placed several restrictions on Michigan wineries engaging in federally authorized bonded transfers of wine.

32. For example, MCL 436.1204a(2)(a)(ii) prohibits the bonded transfer of wine unless the receiving winery "manufactures wine at its licensed premises or the purchasing or receiving small wine maker bottles wine at its licensed premises."

33. The restrictions contained in MCL 436.1204a(2)(a)(ii) are not contained within Title 27 C.F.R. Part 24.

34. MCL 436.1204a(3) prohibits a Michigan winery from selling wine it receives in bond unless one of the following conditions are met:

> (a) The purchasing or receiving manufacturer modifies the purchased or received alcoholic liquor by performing a portion of the manufacturing process as described in section 109(1).
>
> (b) The purchasing or receiving small wine maker bottles the purchased or received wine.
>
> (c) The purchasing or receiving wine maker or small wine maker is selling a shiner on which the wine maker or small wine maker has placed a label under section 111(10).

35. The restrictions contained in MCL 436.1204a(3) are not contained within Title 27 C.F.R. Part 24.

## FACTUAL ALLEGATIONS

36. Greenbush holds a Federal Basic Permit, permit MI-W-21169, issued by the Alcohol, Tax and Trade Bureau ("TTB") which allows it to engage in all permitted activities of a Bonded Winery.

37. 26 U.S.C. § 5362 permits transfers of wine between bonded wine premises under such regulations as the Secretary of the Treasury shall prescribe.

38. 27 C.F.R. § 24.280-24.284 and 27 C.F.R. §24.309-24.312 were prescribed by the Secretary of the Treasury to govern transfers of wine in bond.

39. These C.F.R. sections are included in the Code as they were adopted by reference

pursuant to Rule 436.1708.

40. Greenbush maintains a bonded wine premises for the purposes of 26 U.S.C. § 5362 and as required by 27 C.F.R. § 24.101 and 27 C.F.R. § 24.105.

41. 27 C.F.R. § 24.101(b) authorizes Greenbush to engage in the following operations pursuant to its Basic Permit:

> (1) The receipt, production, blending, cellar treatment, storage, and bottling or packing of untaxpaid wine;
>
> (2) The use of wine spirits in beverage wine production and the use of spirits in nonbeverage wine production;
>
> (3) The receipt, preparation, use, or removal of fruit, concentrated or unconcentrated fruit juice, or other materials to be used in the production or cellar treatment of wine; and
>
> (4) The preparation, storage, or removal of commercial fruit products and by-products (including volatile fruit-flavor concentrate) not taxable as wine.

42. The Code also authorizes Greenbush to engage in these same operations as 27 C.F.R § 24.101(b) is included in the code by reference pursuant to Rule 436.1708.

43. Greenbush has engaged in some of the operations authorized by 27 C.F.R. § 24.101(b).

44. Bonded transfers of wine are reported to the Department of Treasury on Form 5120.17; Report of Wine Premises Operations. (Exhibit E.)

45. Greenbush holds a Small Wine Maker license issued by Defendant MLCC. It has held this Small Wine Maker license continuously since October 21, 2016.

46. Despite MCL 436.1109(1) conflicting with federal law, still, Greenbush actively manufactures wine at its licensed premises in accordance with the definition of "manufacture" provided in MCL 436.1109(1) by way of fermentation, blending, mixing and concocting wine.

47. Greenbush offers this wine for sale and consumption on its licensed premises.

48. Further, Greenbush actively purchases bonded wine produced by other Michigan manufacturers.

49. Greenbush offers this wine for sale and consumption on its licensed premises.

50. This activity is conducted in accordance with MCL 436.1204(2)(a)(ii) and MCL 436.1204(3)(a).

**MLCC Seizes Greenbush's Wine Inventory**

51. On June 19, 2019, Defendants entered Greenbush's bonded wine premises and alleged that Greenbush was selling wine in violation of Michigan law.

52. Greenbush informed Defendants that Greenbush was manufacturing wine in accordance with MCL 436.1109(1).

53. Defendants disregarded Greenbush's statements.

54. Greenbush also informed Defendants that Greenbush was engaging in permitted bonded transfers of wine pursuant to MCL 436.1204(2)(a)(ii) and MCL 436.1204(3)(a).

55. Defendants responded that Greenbush was required to ferment every drop of wine that it sold.

56. Defendants also made the contrary direction to Greenbush that it needed to modify every drop of wine it received in bond.

57. Such modification would be practically impossible as most wine that is transferred in bond comes in the form of a "Shiner" which is an unlabeled bottle of sealed wine.

58. Defendants then improperly seized all of Greenbush's wine inventory alleging violations of MCL 436.1204a(2)(a)(ii) and MCL 436.1204a(3)(a).

59. Defendant continues to possess all of Greenbush's seized wine inventory at the commencement of this action, which has been impounded at Greenbush's premises.

60. Defendant's seizure of Greenbush's wine inventory jeopardizes federal revenue

by way of excise taxes.

**MLCC's improper enforcement activities disrupt and burden the Michigan wine industry.**

61. Plaintiff MCA's members are cideries who hold Federal Basic Permits issued by TTB which allows them to engage in all permitted activities of a Bonded Winery.

62. MCA's members also hold licenses issued by Defendant MLCC to operate wineries/cideries.

63. MCA's members engage in bonded transfers of wine and cider.

64. Vander Mill is a member of MCA.

65. Farmhaus is a member of MCA.

66. Specifically, MCA's members have sold cider to Greenbush through bonded transfers.

67. Some of the cider that was seized by Defendants originated from a member of MCA; specifically Vander Mill.

68. Prior to Defendant MLCC's new position in early 2018 regarding bonded transfers of wine, MCA's members freely engaged in bonded transfers of wine and cider.

69. MCA's members invested heavily in their businesses, relying on federal law allowing bonded transfers as well as Defendant MLCC acting in accordance with federal law.

70. Vander Mill relied on federal law allowing bonded transfers as it has expanded its business over the years.

71. Farmhaus relied on federal law allowing bonded transfers as it has expanded its business over the years.

72. As a result of the change in the apparent law in Michigan, MCA's members have suffered damages in several ways.

73. Michigan wineries and breweries that are allowed to purchase wine have in some

cases ceased buying wine/cider, or have limited their purchases, for fear that Defendant MLCC will issue a violation.

74.     MCA's member businesses' sales of cider have decreased since the enforcement actions began in 2018 and following the law changes in December of 2018.

75.     Vander Mill's sales of cider have decreased since the enforcement actions began in 2018 and following the law changes in December of 2018.

76.     Farmhaus' sales of cider have decreased since the enforcement actions began in 2018 and following the law changes in December of 2018.

77.     MCL 436.1204a(2)(a)(ii) prohibits the bonded transfer of wine unless the receiving winery "manufactures wine at its licensed premises or the purchasing or receiving small wine maker bottles wine at its licensed premises."  But, that statute is silent as to how much wine must be produced.

78.     This silence has led to varying interpretations across the wine industry with some stating the requirement is anything more than zero while others believe it is an amount substantially more.

79.     Defendant MLCC has not taken a position on the required amount.

80.     MLCC Chairman Andrew J. Deloney's discretionary actions in his official capacity permitted the enforcement division activities that violate Michigan Compiled Laws, Michigan Administrative Rules, the Code of Federal Regulations and the Constitution of the United States.

81.     MLCC District Supervisor Kurt Cox's discretionary actions in his official capacity carried out enforcement division activities that violate Michigan Compiled Laws, Michigan Administrative Rules, the Code of Federal Regulations and the Constitution of the United States.

82. MLCC Regulation Agent and Investigator Jon Reeder's discretionary actions in his official capacity carried out enforcement division activities that Michigan Compiled Laws, Michigan Administrative Rules, the Code of Federal Regulations and the Constitution of the United States.

## COUNT I

## FEDERAL PREEMPTION

83. Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

84. On August 16, 1954, the Internal Revenue Code was enacted. 26 U.S.C. Title 26.

85. On September 2, 1958, Subtitle E "Alcohol, Tobacco and Certain Other Excise Taxes" was added to the Internal Revenue Code.

86. The Secretary of the Treasury was given the authority to enact regulations to enforce Subtitle E of the Internal Revenue Code. 26 U.S.C. § 5556.

87. Today, those regulations, as they relate to wine, are contained in 27 C.F.R. Part 24 which includes sections 24.1 to 24.332.

88. Title 27 C.F.R. Part 24 is a comprehensive regulatory scheme which regulates, among other areas, the manufacturing, transfer and labeling of wine.

89. In 1970, Michigan rescinded its laws and regulations related to the manufacture of wine as they had been preempted by federal law.

90. Instead of keeping its preempted regulations, Michigan incorporated federal law related to the manufacture of wine into the Code.

91. Approximately fifty years later, Michigan enacted MCL 436.1204a and MCL 436.1109(1).

92. MCL 436.1204a is preempted as a matter of law, by 26 U.S.C. § 5362, 27 C.F.R. § 24.309 and, generally, 27 C.F.R. Part 24.

93. As a result, Plaintiffs are entitled to a declaratory judgment declaring MCL 436.1204a to be unconstitutional as preempted by federal law.

94. MCL 436.1109(1) is preempted as a matter of law by Title 27 C.F.R. Part 24 which is a comprehensive scheme regulating and defining the manufacture of wine.

95. As a result, Plaintiffs are entitled to a declaratory judgment declaring MCL 436.1109(1) to be unconstitutional as preempted by federal law.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue a declaratory judgment declaring MCL 436.1204a and MCL 436.1109(1) preempted by federal law. Plaintiffs further request that this Court issue a preliminary and permanent injunction, and until a hearing on a preliminary injunction can be had, a temporary restraining order, restraining and enjoining Defendants from prohibiting the in-bond transfer of wine. Plaintiffs further request that this Honorable Court award damages in their favor and against Defendants in an amount to be determined at trial to include costs and reasonable attorneys' fees, and award such other relief as this Honorable Court deems just and appropriate.

## COUNT II

### THE MICHIGAN LIQUOR CODE IS UNCONSTITUTIONALLY VOID FOR VAGUENESS AND ALLOWING FOR ARBITRARY AND CAPRICIOUS ENFORCEMENT

96. Plaintiffs incorporate and reallege the preceding paragraphs as if full restated herein.

97. MCL 436.1109 defines "Manufacture" to mean "to distill, rectify, ferment, brew, make, produce, filter, mix, concoct, process, or blend an alcoholic liquor or to complete a portion of 1 or more of these activities."

98. However, these terms are not defined and subject to arbitrary application.

99. MCL 436.1204a(2)(a)(ii) prohibits the bonded transfer of wine unless the receiving winery "manufactures wine at its licensed premises or the purchasing or receiving small wine maker bottles wine at its licensed premises."

100. The statute does not define what volume of wine complies with the requirement to "manufacture[] wine at its licensed premises" which has led arbitrary interpretations of this requirement.

101. This section is also apparently vague and subject to differing interpretations as Defendants have taken the position that "manufacture" under MCL 436.1204a(2) includes only fermentation as it relates to wine and not the other activities included in MCL 436.1109.

102. Or, alternatively, Defendants have also taken the position that every drop of wine received in bond must be modified in some unspecified fashion.

103. Greenbush has mixed, concocted and/or blended wine that it has received through a bonded transfer yet Defendants still seized their wine and alleged that Greenbush has not complied with 436.1204a(2).

104. MCL 436.1204a(3) prohibits a Michigan winery from selling wine it receives in bond unless one of the following conditions are met:

> (a) The purchasing or receiving manufacturer modifies the purchased or received alcoholic liquor by performing a portion of the manufacturing process as described in section 109(1).
>
> (b) The purchasing or receiving small wine maker bottles the purchased or received wine.
>
> (c) The purchasing or receiving wine maker or small wine maker is selling a shiner on which the wine maker or small wine maker has placed a label under section 111(10).

105. But, this section also is apparently vague and subject to differing interpretations

as Defendants have taken the position that "manufacturing process" under MCL 436.1204a(3) includes only fermentation as it relates to wine and not the other activities included in MCL 436.1109.

106.    Greenbush has modified wine that it received in bond by mixing, concocting and/or blending that wine but Defendants still seized Greenbush's wine and alleged that Greenbush has not complied with 436.1204a(3).

107.    MCA's members have lost business because of Defendants' arbitrary enforcement of the vague statute.

108.    Vander Mill has lost business because of Defendants' arbitrary enforcement of the vague statute.

109.    Farmhaus has lost business because of Defendants' arbitrary enforcement of the vague statute.

110.    Without a clear understanding of what is allowed and not allowed, Michigan wineries have ceased or decreased their purchases of cider from MCA's members.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court issue a declaratory judgment declaring MCL 436.1204a and MCL 436.1109(1) unconstitutional and issue a preliminary and permanent injunction, and until a hearing on a preliminary injunction can be had, a temporary restraining order, restraining and enjoining Defendants from prohibiting the in-bond transfer of wine. Plaintiffs further request that this Honorable Court award damages in their favor and against Defendants in an amount to be determined at trial to include costs and reasonable attorneys' fees, and award such other relief as this Honorable Court deems just and appropriate.

## COUNT III

## UNLAWFUL TAKING OF PRIVATE PROPERTY

111. Plaintiffs incorporate and reallege the preceding paragraphs as if full restated herein.

112. MCL 436.1235 required Defendants to obtain a search warrant before they could seize Greenbush's property in alleged violation of the Code.

113. The Defendants did not have a search warrant before they seized Greenbush's property.

114. Thus, the seizure was in violation of the Fourth Amendment to the United States Constitution.

115. At the time of the unlawful seizure of wine inventory, Greenbush was the owner and lawfully entitled to the immediate possession of such goods, which are listed in the schedule attached to this Complaint, marked "Exhibit F," and incorporated by reference.

116. At the time of the unlawful seizure of Greenbush's wine inventory, Vander Mill was the owner and lawfully entitled to the immediate possession of the kegs containing the seized cider.

117. That on or about June 19, 2019, prior to the commencement of this action, Defendant unlawfully seized the above-mentioned wine inventory and the kegs holding that inventory.

118. That at the time of the unlawful seizure of wine inventory, the wine inventory was lawfully stored under federal bond in accordance with 27 C.F.R. 24.101.

119. Defendants have no authority to regulate wine held under federal bond and no authority to seize federally bonded wine.

120. Greenbush is informed and believes, and, on the basis of such information and belief, alleges, that the alleged cause of detention of the wine inventory by Defendant was a perceived violation of MCL 436.1204(2)(a)(ii) and MCL 436.1204(3)(a).

121. Greenbush is informed and believes, and, on the basis of such information and belief, alleges, that Defendants' perceived violation is based on mistaken belief that Greenbush is not engaged in the manufacture of wine, directly contrary to the affirmative statements made by employees of Greenbush.

122. On or about June 19, 2019, Greenbush demanded of Defendants that Defendants return the wine inventory to Plaintiff, but Defendants refused, and continues to refuse to do so.

123. The value of the wine inventory seized by Defendants on June 19, 2019, is the sum of approximately $6,000.

124. The value of the kegs seized by Defendants on June 19, 2019, is the sum of approximately $1,200.

125. Defendants' wrongful detention of the wine inventory has prevented Greenbush from using the wine inventory in furtherance of its business.

126. Defendants' wrongful detention of the cider kegs has prevented Vander Mill from using the kegs in furtherance of its business.

127. Defendants have also demanded that Greenbush cease making us of its small winemaker license such that Greenbush cannot sell wine.

128. The incident at Greenbush on June 19, 2019, is not the first time Defendants have illegally seized wine and cider.

129. Farmhaus has had its property improperly seized by Defendants based on allegations of illegal bonded transfers of wine.

130. The Farmhaus kegs that were seized by Defendants have not been returned.

131. Other members of MCA have also had their property improperly seized by Defendants based on allegations of illegal bonded transfers of wine.

132. Some of this property and kegs were never returned to the MCA members.

133. Defendants did not seize the property pursuant to a warrant for collection of any tax, assessment, or fine, or seized under a lawful execution or attachment or other legal process.

134. MCL 600.2920 allows Plaintiffs to bring action for immediate possession of the unlawfully seize private property and to recover damages incurred.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant them an injunction requiring immediate return of all wine inventory and kegs owned by Plaintiffs that have been seized by Defendants or in the alternative award Plaintiffs damages for the value of the property seized. Greenbush further requests that this Honorable Court award damages for the loss and use of its small wine maker license and against Defendant in an amount to be determined at trial, to include costs and reasonable attorneys' fees, and award such other relief as this Honorable Court deems just and appropriate.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.

By:   /s/ Joseph M. Infante
     Joseph M. Infante (P68719)
     Christopher J. Gartman (P83286)
     Attorneys for Greenbush Brewing Co
     99 Monroe Avenue NW, Suite 1200
     Grand Rapids, MI  49503
     (616) 776-6333
     infante@millercanfield.com
     gartman@millercanfield.com

Dated:  June 3, 2019

33943796.1\156050-00001