UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

GREENBUSH BREWING CO., a Michigan
Corporation, MICHIGAN CIDER
ASSOCIATION, a Michigan Nonprofit
Corporation, FARMHAUS CIDER CO., a
Michigan Corporation and VANDER MILL,
LLC, a Michigan Limited Liability Company,

        Plaintiffs,

v

MICHIGAN LIQUOR CONTROL
COMMISSION, ANDREW J. DELONEY,
Chairman, in his official capacity; KURT COX,
Grand Rapids District Supervisor, in his
official capacity and JON REEDER, a Regulation
Agent and Investigator, in his official capacity,

        Defendants.

_____/

Case No. 1:19-cv-536

HON. PAUL L. MALONEY

**ORAL ARGUMENT
REQUESTED**

**DEFENDANTS MICHIGAN LIQUOR CONTROL COMMISSION,
ANDREW DELONEY, KURT COX AND JON REEDER'S
BRIEF IN SUPPORT OF MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

Dana Nessel
Attorney General

Adam M. Leyton (P80646)
Jason A. Geissler (P69322)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enforcement Div.
525 W. Ottawa St., 1st floor
Lansing, MI 48933
(517) 241-0210
LeytonA1@michigan.gov

Dated:  August 1, 2019

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  The Eleventh Amendment provides immunity to state agencies sued in federal court and provides immunity to state employees sued in their official capacities in federal court for all claims seeking monetary relief.  Plaintiffs sued the Liquor Control Commission, an agency of the State of Michigan, and Commission employees Deloney, Cox and Reeder in their official capacities in federal court.  Is the Commission entitled to Eleventh Amendment immunity on all claims and are the Commission employees sued in their official capacities entitled to Eleventh Amendment immunity on all claims seeking monetary relief?

2.  A federal preemption claim fails if Plaintiffs cannot show clear and manifest Congressional intent to preempt a state law falling within that state's police powers.  The Commission's authority to license and set guidelines for entities distributing, transporting, or selling alcohol within its borders fall within those police powers.  Plaintiffs have not identified any federal statute expressing or implying Congressional intent to preempt Michigan's ability to regulate alcohol in this regard.  Have Plaintiffs' failed to state a claim for federal preemption?

3.  A statute is not void for vagueness if it is capable of being understood by persons of ordinary intelligence and provides standards by which to enforce its language.  The Michigan Liquor Control Code's provisions regarding manufacturing wine clearly define the requirements by which small wine makers must operate and provide clear criteria by which to enforce those requirements.  Have Plaintiffs failed to state a void for vagueness claim?

4.  Warrantless searches do not violate the Fourth Amendment in the context of closely regulated industries if the search passes the Supreme Court's test in *New York v. Burger*.  Michigan's alcoholic liquor industry is a closely regulated industry and the administrative inspection conducted in this case is authorized by the Michigan Liquor Control Code and meets the requirements articulated in *Burger*.  Have Plaintiffs failed to state a Fourth Amendment violation claim?

5.  *Younger* abstention applies when a state agency has initiated administrative proceedings based on the facts alleged in a federal complaint, important state interests are furthered by those proceedings, and the administrative process allows for an opportunity to litigate constitutional claims at issue.  Relatedly, requiring exhaustion of administrative remedies allows an agency the first

opportunity to hear the facts, analyze the statutes it enforces in light of those facts, and apply its expertise over subject matter that is also pending before a federal court.  The Commission has initiated disciplinary proceedings against Greenbush based on the facts alleged in this case, those proceedings further the state's interest in regulating the manufacture and sale of alcohol, and Plaintiffs have the ability to litigate their constitutional claims through Michigan's agency appeal provisions.  Should Greenbush's claims be dismissed pursuant to *Younger* abstention and failure to exhaust administrative remedies?

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

<u>*Authority*</u>:

**<u>Cases</u>**

*Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553 (6th Cir. 1999)

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992)

*Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970)

*Edelman v. Jordan*, 415 U.S. 651 (1974)

*Ex parte Young*, 209 U.S. 123 (1908)

*Gade v. Nat'l Solid Waste Mgmt. Ass'n*, 505 U.S. 88 (1992)

*Hamilton v. Lokuta*, 803 F. Supp. 82 (E.D. Mich. 1992)

*McKart v. United States*, 395 U.S. 185 (1969)

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)

*New York v. Burger*, 482 U.S. 691 (1987)

*People v. Thomas*, 201 Mich. App. 111, 505 N.W.2d 873 (Mich. Ct. App. 1993)

*Platt v. Bd. of Comm'rs on Grievances and Discipline of the Ohio Supreme Court*, 894 F.3d 235 (2018)

*Smith v. Sundmacher*, 2006 WL 3091968 (W.D. Mich. Oct. 30, 2006)

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019)

*Virginia Uranium, Inc v. Warren*, 139 S. Ct. 1894 (2019)

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)

*Younger v. Harris*, 401 U.S. 37 (1971)

**<u>Statutes</u>**

Mich. Comp Laws § 436.1109(1)

Mich. Comp. Laws § 436.1111(12)

Mich. Comp. Laws § 436.1201(2)

Mich. Comp. Laws § 436.1204a(2)-(3)

Mich. Const. 1963, art. IV, § 40

U.S. Const. amend. XXI

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6)

## INTRODUCTION

From a high view, this case concerns what it means to "manufacture" wine under Michigan law and, as a result, enjoy the benefits that Michigan law confers on those who hold wine-manufacturing licenses.  Plaintiff Greenbush holds a "small wine maker" license issued by the Liquor Control Commission, (Pls' Compl. ¶ 45), which entitles it to manufacture and sell wine, such as to consumers who drink it in an approved tasting room at the small wine maker's licensed premises.  See Mich. Comp. Laws § 436.1537(1)(o).

Plaintiffs here—Greenbush Brewing Co., Farmhaus Cider Co., Vander Mill, LLC and the Michigan Cider Association (MCA)—primarily challenge the statutes defining "manufactur[ing]" wine,  Mich. Comp. Laws § 436.1109(1), and stating the conditions under which small wine makers may receive wine from another manufacturer and subsequently sell that wine, Mich. Comp. Laws § 436.1204a(2)(a)-(3).[1]  Plaintiffs assert that federal laws preempt these state laws and that these provisions are unconstitutionally vague.  Greenbush and Vander Mill also assert that Defendants violated their Fourth Amendment rights by seizing certain items during a June 19, 2019 visit by Commission investigators to Greenbush's premises.

---

[1] For purposes of the Michigan Liquor Control Code, cider is classified as a type of wine pursuant to Mich. Comp. Laws § 436.1113a(9).  Commission licensed manufacturers of cider must therefore comply with the manufacturing requirements for wine.

Each claim fails as a matter of law.  First, Eleventh Amendment immunity bars all claims against the Commission and all claims seeking monetary relief against the named Commission employees, sued in their official capacities.  Second, Plaintiffs' preemption claim fails because they cannot overcome the strong presumption against federal preemption applicable here.  See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 505, 516 (1992).  The federal laws Plaintiffs cite do not show any Congressional intent to preempt the definition of "manufacture" in Mich. Comp. Laws § 436.1109(1) or the conditions on manufacturers acquiring and selling wine received from other manufacturers in Mich. Comp. Laws § 436.1204a.  The cited federal laws are tax laws, not alcohol production and sale laws.

Third, Plaintiffs cannot show that these Michigan statutes are void for vagueness.  They cannot show that persons of ordinary intelligence cannot understand these statutes or that the language invites arbitrary enforcement. Statutes are not rendered void by not defining all terms they contain or by containing "flexibility and reasonable breadth, rather than meticulous specificity." *Platt v. Bd. of Comm'rs on Grievances and Discipline of the Ohio Supreme Court*, 894 F.3d 235 (2018) (quotations omitted).

Fourth, the Liquor Control Commission's June 19, 2019 search and seizure alleged in the Complaint falls within the "closely regulated industry" exception to the Fourth Amendment warrant requirement that applies to businesses engaged in the manufacture and sale of alcoholic beverages.  See *Colonnade Catering Corp. v.*

2

*United States*, 397 U.S. 72 (1970).  Further, open inspection is well understood in the industry as a condition of licensing.

Finally, the Court may dismiss Plaintiff Greenbush's claims pursuant to the doctrines of *Younger* abstention and failure to exhaust administrative remedies. Any factual disputes raised in the Complaint related to the Commission's June 19, 2019 inspection at Greenbush should be resolved through the state administrative hearing process.

## STATEMENT OF FACTS

**Statutory Background**

Section 2 of the Twenty-First Amendment gives the States broad authority over "[t]he transportation or importation [of intoxicating liquors] into any State, Territory, or possession of the United States for delivery or use therein. . . ." U.S. Const. amend. XXI.  The State of Michigan implements that authority through a constitutional provision permitting the Michigan Legislature to establish the Commission to exercise complete control of the alcoholic beverage traffic in this state, subject to statutory limitations.  Mich. Const. 1963, art. IV, § 40.  The Legislature established the Commission to fulfill that role.  Mich. Comp. Laws § 436.1201(2).  Ultimately, the Legislature enacted what is known as "the Michigan Liquor Control Code of 1998."  Mich. Comp. Laws § 436.1101.

Relevant to this case, the Code permits the Commission to issue "wine maker" licenses.  A "wine maker" is "any person licensed by the [C]ommission to *manufacture* wine and to sell that wine to a wholesaler, to a consumer by direct shipment, at retail on the licensed winery premises, . . . and as provided for in section 537."  Mich. Comp. Laws § 436.1113(10) (emphasis added).  A "small wine maker" is "a wine maker *manufacturing* in this state not more than 50,000 gallons of wine in 1 calendar year."  Mich. Comp. Laws § 436.1111(12) (emphasis added).

As amended in 2018, "manufacture" means "to distill, rectify, ferment, brew, make, produce, filter, mix, concoct, process, or blend an alcoholic liquor or to

1

complete a portion of 1 or more of these activities."  Mich. Comp. Laws § 436.1109(1).  Continuing, the definition of "manufacture" distinguishes between activities that do and do not constitute manufacturing.  For instance, the definition provides that "[m]anufacture does not include bottling or the mixing or other preparation of drinks for serving by those persons authorized under this act to serve alcoholic liquor for consumption on the licensed premises.  In addition, manufacture does not include attaching a label to a shiner."[2]  *Id.*

A small wine maker licensee, such as Greenbush, is subject to regulations and conditions of licensure prescribed in the Code.  One such regulation is found in Mich. Comp. Laws § 436.1204a(1)-(2), which provides generally that a manufacturer, such as "small wine maker," may not receive wine from another manufacturer unless an exception applies.  The exception authorizing a small wine maker to *receive* wine from another manufacturer is met when:

> (*i*) The selling or transferring manufacturer is a wine maker, small wine maker, or out-of-state entity that is the substantial equivalent of a wine maker or small wine maker and is selling or transferring the wine to a wine maker, small wine maker, or out-of-state entity that is the substantial equivalent of a wine maker or small wine maker.

> (*ii*) The purchasing or receiving wine maker or small wine maker *manufactures wine at its licensed premises or* the purchasing or receiving small wine maker *bottles wine at its licensed premises.*

---

[2] "Shiner" is defined in Mich. Comp. Laws § 436.1111(10).

Mich. Comp. Laws § 436.1204a(2)(a)(i), (ii) (emphasis added). Moreover, the Code prohibits a small wine maker from selling the wine it has received from another manufacturer unless it complies with at least one of the following conditions:

> (a) The purchasing or receiving manufacturer modifies the purchased or received alcoholic liquor by performing a portion of the manufacturing process as described in section 109(1).
>
> (b) The purchasing or receiving small wine maker bottles the purchased or received wine.
>
> (c) The purchasing or receiving wine maker or small wine maker is selling a shiner on which the wine maker or small wine maker has placed a label under section 111(10).

Mich. Comp. Laws § 436.1204a(3)(a)–(c).

Federal law also contains requirements concerning wine. Relevant to Plaintiffs' Complaint, the federal Internal Revenue Code (IRC), 26 U.S.C. ch. 51, regulates federal excise tax collection related to the production and importation of wine. For example, 26 U.S.C. § 5041 imposes a federal excise tax on all bonded wine produced in the United States, and such tax is determined at the time the wine is removed for consumption or sale. When used with respect to wine, "bonded" or "in bond" refers to wine possessed under bond to secure the payment of the taxes imposed by Chapter 51. 26 U.S.C. § 5351. The primary purpose of bonds of this character is to indemnify the federal government against possible evasion of the tax. 27 C.F.R. § 24.146. Within these federal tax laws, 26 U.S.C. § 5362 permits a "bonded premises" to remove and transfer un-taxpaid, bonded wine to another "bonded premises" subject to the regulations proscribed by the Secretary of the Treasury. Bonded premises is defined as a "bonded wine cellar or the bonded

3

premises of a distilled spirits plant."  26 U.S.C. § 5362(b)(5); see also 26 U.S.C.

§ 5351 (defining "bonded wine cellar.")

The federal excise tax provisions of the IRC related to bonded wine transfers

are administered by the Alcohol and Tobacco Tax and Trade Bureau (TTB).

Because alcohol is a highly regulated industry at both the state and federal levels,

the TTB's website provides:

> In the United States, each state has the authority to regulate the
> production, sale, and distribution of alcohol within its borders. This
> means state and local jurisdictions may have their own requirements
> in addition to federal requirements. State laws and regulations vary
> widely from state to state, and may be more restrictive than federal
> regulations.
>
> You **must meet all state and local requirements in any state
> where you plan to do business** (unless Federal law preempts the
> state law). If you plan to do business in a state, you must contact its
> appropriate authorities for more information about the state and local
> requirements.

TTB.gov, Alcohol Beverage Authorities in United States, Canada, and Puerto Rico,

https://www.ttb.gov/wine/state-ABC.shtml (last visited August 1, 2019).

## The Complaint

Plaintiffs allege that on June 19, 2019, Commission investigators performed

a regulatory inspection at Greenbush.  (Pls' Compl. ¶ 51.)  During that inspection,

the investigators allegedly informed Greenbush that its wine manufacturing and

wine sales practices violated the Michigan Liquor Control Code, specifically, Mich.

Comp. Laws § 436.1204a(2)(a)(ii) and Mich. Comp. Laws § 436.1204a(3)(a).  (Pls'

Compl. ¶ 58.)  Greenbush claims it informed the investigators that it manufactured wine consistent with the definition of "manufacture" in Mich. Comp. Laws § 436.1109(1).  (Pls' Compl. ¶ 52.)  Moreover, because it allegedly engaged in "bonded transfers of wine[,]" Greenbush avers its practices complied with Mich. Comp. Laws § 436.1204a(2)(a)(ii) and Mich. Comp. Laws § 436.1204a(3)(a).  (Pls' Compl. ¶ 54.)

Plaintiffs further aver that Commission investigators disregarded Greenbush's assertions of wine manufacturing and legal wine sales and impounded all of Greenbush's wine inventory because of the perceived violations.  (Pls' Compl. ¶ 58.)  Plaintiffs claim that part of the wine impounded by the investigators included wine held in kegs owned by Vander Mill.  (Pls' Compl. ¶ 116.)  Plaintiffs do not allege any involvement by MCA or Farmhaus during the June 19, 2019 inspection.[3]

The Complaint asserts three claims against the Commission and Commission employees Andrew Deloney, Kurt Cox and Jon Reeder in their official capacities. First, in Count I, Plaintiffs claim that Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a are preempted "as a matter of law[.]"  (Pls' Compl. ¶¶ 92, 94.)  The asserted bases for Plaintiffs' federal preemption claim are 26 U.S.C.

---

[3] After their June 19, 2019 inspection, the investigators drafted a violation report regarding the practices at Greenbush.  (Comm'n Violation Report, Ex. 1 (without attachments).)  An administrative complaint has been filed against Greenbush pursuant to that report and is pending disposition.  (Comm'n Admin. Compl., Ex. 2.)

§ 5362, 27 C.F.R. § 24.309 and 27 C.F.R. Part 24.  (Pls' Compl. ¶ 92.)   Related to this claim, Plaintiffs allege that because Commission administrative rule 436.1708 requires wine manufacturers to meet the manufacturing requirements in 27 C.F.R. Part 24, "the *Michigan Liquor Control Code* was amended to cede regulation and enforcement of the manufacture and labeling of alcohol, including wine, to the federal government."  (Pls' Compl. ¶ 18, emphasis added.)  Not only did the Commission's administrative rules not "cede" such regulation to the federal government, Plaintiffs' Complaint erroneously characterizes the Commission's administrative rule as a provision of "the Michigan Liquor Control Code."  In actuality, the Michigan Liquor Control Code is the body of liquor laws enacted by the Michigan Legislature.  See Mich. Comp. Laws § 436.1101.

Second, in Count II, Plaintiffs claim that the definition of manufacture in Mich. Comp. Laws § 436.1109(1), and the provisions governing transfers of wine between manufacturers and sales of that wine in Mich. Comp. Laws § 436.1204a(2)(a)(ii), and Mich. Comp. Laws § 436.1204a(3) are void for vagueness. (Pls' Compl. ¶¶ 96-110.)  Because Mich. Comp. Laws § 436.1109(1)'s definition of "manufacture" does not define each term in that definition, Plaintiffs claim the statute is unconstitutionally vague and "subject to arbitrary application[.]"  (Pls' Compl. ¶ 98.)  Likewise, Plaintiffs aver that Mich. Comp. Laws § 436.1204a(2)(a)(ii) should be invalidated because "the statute does not define what volume of wine complies with the requirement to 'manufacture wine at its licensed premises' which has led to arbitrary interpretations of this requirement."  (Pls' Compl. ¶ 100.)

Plaintiffs last vagueness challenge posits that Mich. Comp. Laws § 436.1204a(3)(a) is unconstitutional because the phrase "manufacturing process" used in the statute is "vague and subject to differing interpretations[.]"  (Pls' Compl. ¶ 105.)

Finally, Plaintiffs Greenbush and Vander Mill claim that Commission investigators violated the Fourth Amendment by impounding Greenbush's wine and Vander Mill's kegs pursuant to its inspection on June 19, 2019.  (Pls' Compl. ¶¶ 111-134.)  Greenbush and Vander Mill maintain that the investigators were required to obtain a search warrant before seizing the wine and kegs pursuant to Mich. Comp. Laws § 436.1235.  (Pls' Compl. ¶ 112.)

Plaintiffs request declaratory, injunctive, and monetary relief for each of these claims.  Pls' Compl. ¶¶ 95, 110, 134.

## STANDARD OF REVIEW

As provided by Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where a plaintiff fails to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests a complaint's legal sufficiency. See *In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires more than bare assertions of legal conclusions; a plaintiff must provide the "grounds" of his or her "entitlement to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  Although

the Court must accept the complaint's factual allegations as true, the Court does not have to accept the complaint's legal conclusions as true.  See *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Regardless of the factual allegations in the Complaint, all of Plaintiffs' claims fail as a matter of law.

**I.     Plaintiffs' suit against the Commission is barred by Eleventh Amendment immunity, as are monetary damages sought against Commission employees in their official capacities.**

Plaintiffs' Complaint seeks damages against the Commission and Commission employees in their official capacities.  Notably, no specific statute, such as 42 U.S.C. § 1983, is cited for authorizing monetary relief, so it is unclear how Plaintiffs could be entitled to it.

But this is of no consequence, because a state agency is protected from suit in federal court by the Eleventh Amendment.  See *Quern v. Jordan*, 440 U.S. 332, 341 (1979).  Eleventh Amendment immunity extends to suits brought against a state by its citizens and applies to state agencies and state officials sued in their official capacities, see *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); see also *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 416-17 (6th Cir. 2019).  The Commission is an arm of the State of Michigan pursuant to Mich. Comp. Laws § 436.1201(2).  Thus, the Commission is entitled to Eleventh Amendment immunity on all claims.  Additionally, no State waiver or

Congressional override of immunity exists here.  See *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

The Eleventh Amendment also provides immunity to Defendants Deloney, Cox, and Reeder—state officials sued in their official capacity for monetary damages.  See *Will*, 491 U.S. at 71.  Thus, Plaintiffs can seek only prospective injunctive and declaratory relief against these defendants.  See *Ex parte Young*, 209 U.S. 123 (1908); *Edelman v. Jordan*, 415 U.S. 651 (1974); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 n.1 (6th Cir. 2004).

## II.    Plaintiffs' Complaint does not establish a claim of preemption.

Contrary to Plaintiffs' claims, Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a are not preempted "as a matter of law" by federal authorization of bond-to-bond wine transfers.  (Pls' Compl. ¶¶ 92, 94.)  Claims of preemption are grounded in the Supremacy Clause of the United States Constitution, which states that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding."  U.S. Const. Art. VI, cl. 2.  From this clause, Congress is empowered to enact statutes that preempt state law.  *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 509 (1989).  As such, Congressional intent is the most important factor to be considered when a question of preemption arises.  *Altra Group, Inc. v. Good*, 555 U.S. 70, 76-77 (2008).  Generally, preemption claims fall into one of three categories—express, field, or conflict preemption—but those categories are not strictly distinct.  *Virginia Uranium, Inc v. Warren*, 139 S.

9

Ct. 1894, 1901 (2019) (plurality opinion).  "Invoking some brooding federal interest

or appealing to a judicial policy preference should never be enough to win

preemption of a state law; a litigant must point specifically to a constitutional text

or a federal statute that does the displacing or conflicts with state law."  *Id.*

(internal quotation omitted).

Congressional intent to preempt state law may be *express*, such as where

Congress includes explicit preemptive language in a statute.  *Gade v. Nat'l Solid

Waste Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).  Where no explicit preemptive language

exists, a federal statute may *impliedly* preempt state law through field or conflict

preemption.  *Id.*  Field preemption occurs if the federal law is "so pervasive as to

make reasonable the inference that Congress left no room for the States to supplant

it."  *Id.*  Conflict preemption occurs when compliance with the federal and state laws

are "physical impossibilities," or when the state law "stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress."  *Id.*

A.    **The strong presumption against federal preemption applies.**

"The preemption of state laws represents 'a serious intrusion into state

sovereignty.'"  *Virginia Uranium*, 139 S. Ct. at 1904 (quoting *Medtronic, Inc. v. Lohr*,

518 U.S. 470, 488 (1996)).  Plaintiffs here cannot overcome the "strong presumption"

against federal preemption of state laws falling within the scope of the state's

historic police powers.  *Cipollone*, 505 U.S. at 505, 516; see also *Merrick v. Diageo

Americas Supply, Inc.*, 539 F.3d 336, 341 (6th Cir. 2008).  This presumption may be

overcome only upon a showing that preemption was the "clear and manifest purpose

of Congress." *Medtronic,* 518 U.S. at 475.  This strong presumption against preemption also applies to federal regulations.  See *Schoolcraft Mem'l Hosp. v. Mich. Dep't of Cmty. Health*, 570 F. Supp. 2d 949, 958-59 (W.D. Mich. 2008).  The Supreme Court recently confirmed that "state laws regulating the alcohol trade" are a "right of the States, in exercising their police power, to protect the health, morals and safety of their people[.]" *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2463-464 (2019) (internal quotes omitted).

> **B.    Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a are not preempted by federal tax laws.**

Plaintiffs' Complaint passively asserts that federal law and regulations preempt Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a "as a matter of law[.]"  (Pls' Compl. ¶¶ 92, 94.)  But aside from this conclusory statement, Plaintiffs fail to allege any *express* language in 26 U.S.C. § 5362, 27 C.F.R. § 24.309 or 27 C.F.R. part 24 evidencing Congressional intent to preempt a State's authority to prescribe standards for the manufacturing and sale of wine by state liquor licensees.

Plaintiffs similarly fail to show that Congress *impliedly* preempted the cited state statutes through either pervasively regulating the field or through the presence of conflicting federal laws.  Although the Complaint's numerous legal conclusions appear to suggest that Plaintiffs are asserting field preemption, the federal provisions they reference are not in the same "field" as the Michigan statutes they attack.  More specifically, the IRC provisions in 26 U.S.C. § 5362

authorize bonded premises to transfer un-taxpaid, bonded wine between themselves, but § 5362 and the federal regulations pursuant thereto are only concerned with the *excise tax liability* for the un-taxpaid wine.  For instance, § 5362(b)(1) states that "wine on which *the tax has not been paid or determined* may, under such regulations as the Secretary shall prescribe, be transferred in bond between bonded premises."  26 U.S.C. § 5362(b)(1) (emphasis added).  Likewise, 27 C.F.R. § 24.146 explains that wine bonds are used to "cover the liability for excise taxes imposed by the Internal Revenue Code of 1986[.]"

On the contrary, the Michigan laws at issue concern licensing and regulating persons who manufacture wine, without regard for federal taxation.  By pointing only to federal laws governing the field of excise tax liability, Plaintiffs' Complaint fails to show any clear and manifest Congressional intent to preempt the field of State liquor manufacturing laws like Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a.  Consequently, Plaintiffs have not stated a claim for field preemption; the federal law on wine taxation leaves room for State law on wine production.  See *Gade*, 505 U.S. at 98

Similarly, Plaintiffs also cannot show that Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a conflict with 26 U.S.C. § 5362, and 27 C.F.R. part 24.  See *Gade*, 505 U.S. at 98.  Complying with both the state requirements at issue and the cited federal requirements is far from impossible.  See *id*.  The requirements in Mich. Comp. Laws § 436.1109(1) and Mich. Comp. Laws § 436.1204a are simply not obstacles to the collection of federal excise taxes for wine

transferred in bond.  See *Gade*, 505 U.S. at 98.  A liquor licensee in Michigan can meet the manufacturing requirements in Mich. Comp. Laws § 436.1109(1) and the requirements to receive and sell wine from another manufacturer in Mich. Comp. Laws § 436.1204a and pay the federal excise taxes for wines transferred in bond.

Further, as a whole, Plaintiffs' preemption claim ignores the State of Michigan's authority over its alcoholic liquor traffic.  Notably, the TTB recognizes these nuances and advises people to consult with relevant state authority.  In fact, the TTB's website embraces this multi-faceted relationship by including the following directive on its website:

> In the United States, each state has the authority to regulate the production, sale, and distribution of alcohol within its borders. This means state and local jurisdictions may have their own requirements in addition to federal requirements. State laws and regulations vary widely from state to state, and may be more restrictive than federal regulations.
>
> You **must meet all state and local requirements in any state where you plan to do business** (unless Federal law preempts the state law). If you plan to do business in a state, you must contact its appropriate authorities for more information about the state and local requirements.

TTB.gov, Alcohol Beverage Authorities in United States, Canada, and Puerto Rico, https://www.ttb.gov/wine/state-ABC.shtml (last visited August 1, 2019).  Clearly, there has been no implied preemption where even the Federal government recognizes the state's ability to enact its own requirements regarding the alcoholic beverage traffic within that particular state's borders; even if those standards are more stringent.

### III.   Plaintiffs' Complaint fails to adequately state a void for vagueness claim.

State statutes are entitled to a presumption of constitutionality.  See *Illinois v. Krull*, 480 U.S. 340, 351 (1987).  That presumption precludes a finding that a statute is void for vagueness unless Plaintiffs show the statute at issue (1) fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) fails to establish standards for those who apply the law leading to arbitrary enforcement.  *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999).  If the statute is civil, rather than criminal, in nature, then it is afforded "greater tolerance . . . because the consequences of imprecision are qualitatively less severe."  *Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).  Statutes dealing in economic regulations are likewise subject to a "less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."  *Id.* at 498.  Because this case involves state statutes that are civil in nature and involve economic regulations, the lenient vagueness test applies.

Whether a statute is subject to differing interpretations—as Plaintiffs contend is the case here—does not render the statute unconstitutionally vague.  If that was the standard, the majority of laws on the books would be invalid.  "We can never expect mathematical certainty from our language."  *Platt*, 894 F.3d at 246 (quotation omitted).

A.   **The Code's definition of "manufacture" is not unconstitutionally vague.**

Plaintiffs aver that the Code's definition of manufacture in Mich. Comp. Laws § 436.1109(1) is unconstitutionally vague because the "terms are not defined and subject to arbitrary application." (Pls' Compl. ¶ 98.) The terms Plaintiffs refer to are "distill, rectify, ferment, brew, make, produce, filter, mix, concoct, process [and] blend." (Pls' Compl. ¶ 97.) But the absence of definitions of terms does not render a statute void for vagueness when the plain meaning of the words provides adequate notice. See *Platt*, 894 F.3d at 246-47; *United States v. Namey*, 364 U.S. 844-45 (6th Cir. 2004). The terms in Mich. Comp. Laws § 436.1109(1) have generally accepted meanings, and meaning within the alcoholic beverage industry, and businesses operating in Michigan have a reasonable opportunity to understand the different activities that constitute manufacturing alcohol by consulting the statute.

In fact, Plaintiffs allege in their Complaint that they understood the statute and manufacture wine within that definition "by way of fermentation, blending, mixing and concocting wine." (Pls' Compl. ¶ 46.) Thus, the terms in Mich. Comp. Laws § 436.1109(1) are sufficiently clear to allow ordinary people in the alcoholic beverage industry an opportunity to understand what it means to manufacture alcohol.

Moreover, Plaintiffs Complaint does not establish that Mich. Comp. Laws § 436.1109(1) permits arbitrary enforcement. Not only does the statute articulate what does constitute manufacturing, it articulates activities that do *not* constitute manufacturing ("[m]anufacture does not include bottling or the mixing or other

15

preparation of drinks for serving by those persons authorized under this act to serve alcoholic liquor for consumption on the licensed premises.  In addition, manufacture does not include attaching a label to a shiner.")  By including this language, the statute provides adequate protections against arbitrary enforcement and, thus, is not unconstitutionally vague.

### B.    The conditions under which small wine makers may obtain wine from other manufacturers are not unconstitutionally vague.

Plaintiffs vagueness challenge to Mich. Comp. Laws § 436.1204a(2)(a)(ii) is equally unavailing and should be dismissed.  The statute generally provides that manufacturers are prohibited from transferring product between each other, except under limited circumstances.  The statute then identifies the limited circumstances under which a small winemaker may receive wine from another manufacturer.  A manufacturer may sell or transfer wine to another manufacturer only if the receiving party is a small winemaker *and* the purchasing small winemaker manufactures wine at its licensed premises or bottles wine at its licensed premises. See Mich. Comp. Laws § 436.1204a(2)(a)(i), (ii).  If the receiving party cannot meet these conditions, they may not receive wine from another manufacturer.

Plaintiffs contend that the second condition—that the receiving wine maker "manufactures wine at its licensed premises" or "bottles wine at its licensed premises," Mich. Comp. Laws § 436.1204a(2)(a)(ii)—is vague because it does not define what volume a small winemaker is required to manufacture before it may receive wine from another wine manufacturer.  (Pls' Compl. ¶ 100.)  But as long as

16

the statute is capable of being understood by a person of ordinary intelligence, a statute is not unconstitutionally vague even if "no one can seem to put a finger on just how far the law sweeps[.]"  See *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1151-52 (2017).  By its plain language, a volume requirement is not necessary to assist in understanding Mich. Comp. Laws § 436.1204a(2)(a)(ii).

The conditions in Mich. Comp. Laws § 436.1204a(2)(a)(ii) also provide sufficient standards by which to enforce the statute's language.  The statute requires small wine makers to either manufacture wine or bottle wine at their licensed premises before they may lawfully purchase or receive wine from another wine manufacturer.  "Manufacture" is defined in Mich. Comp. Laws § 436.1109(1) and is not subject to arbitrary application.  "Bottle" is defined in Mich. Comp. Laws § 436.1105(9) and is not subject to arbitrary application.  Any differences in interpretation do not lead to a conclusion that the statute is unconstitutionally vague.

### C.    The similar condition under which small wine makers may sell wine obtained from other manufacturers is not unconstitutionally vague.

Likewise, Plaintiffs' vagueness claim related to Mich. Comp. Laws § 436.1204a(3)(a) should be dismissed.  This statute permits small wine makers to sell wine they have received or purchased from other manufacturers if one of three conditions are satisfied.  Plaintiffs challenge the condition in Mich. Comp. Laws § 436.1204a(3)(a) that "[t]he purchasing or receiving manufacturer [must] modif[y] the purchased or received wine by performing a portion of the manufacturing

process as described in [Mich. Comp. Laws § 436.1109(1)]." By incorporating the definition of "manufacture" from Mich. Comp. Laws § 436.1109(1), Mich. Comp. Laws § 436.1204a(3)(a) provides clear direction by which persons of ordinary intelligence in the alcoholic beverage industry must adhere to fulfill the condition for sales of wine received by another manufacturer.

Nor is this provision's language subject to arbitrary application. Modifying wine in compliance with the statute is equal to "performing a portion of the manufacturing process" as defined in Mich. Comp. Laws § 436.1109(1). Thus, the statute provides clear guidance for enforcement and is not subject to arbitrary interpretations.

## IV.   Greenbush and Vander Mill have not adequately stated a Fourth Amendment violation.

Even construing the facts in the Complaint as true, Commission investigators did not violate the Fourth Amendment by seizing wine and cider and kegs at Greenbush pursuant to their administrative license investigation. Plaintiffs participate in a closely regulated industry where such warrantless seizures are authorized. The Fourth Amendment bans "unreasonable searches and seizures," but a well-known exception to the Fourth Amendment's warrant requirement exists where businesses engage in a "closely regulated industry." *New York v. Burger*, 482 U.S. 691, 702 (1987). In such cases, the privacy interests of the businesses are weakened and the government interests in regulation are "concomitantly heightened." *Id.* The *Burger* Court stated that a statute permitting a warrantless

search does not violate the Fourth Amendment when: (1) "a substantial government interest [] informs the regulatory scheme pursuant to which the inspection is made[,]" (2) the warrantless inspection is "necessary to further the regulatory scheme[,]" and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant." *Id.* at 702-03.

The Commission's June 19, 2019 regulatory inspection at Greenbush was authorized by the Michigan Liquor Control Code, specifically Mich. Comp. Laws § 436.1217(2). That statute permits administrative searches at licensed premises by "[C]ommission investigator[s] or law enforcement officer[s] empowered to enforce the [C]ommission's rules and this act[.]" Continuing, Mich. Comp. Laws § 436.1217(2) informs licensees that administrative searches may occur "during regular business hours or when the licensed premises are occupied by the clerk, servant, agent, or employee of the licensee." Lastly, the statute explicitly provides that "[e]vidence of a violation of this act or rules promulgated under this act discovered under this subsection may be *seized* and used in an administrative or court proceeding." Mich. Comp. Laws § 436.1217(2) (emphasis added).

Administrative searches conducted by the Commission pursuant to Mich. Comp. Laws § 436.1217(2) have been upheld by Federal District Courts in Michigan as well as the state Court of Appeals. In *Hamilton v. Lokuta*, 803 F. Supp. 82 (E.D. Mich. 1992), the District Court for the Eastern District of Michigan found that the

19

predecessor statute to Mich. Comp. Laws § 436.1217(2), Mich. Comp. Laws § 436.7a(2), satisfied the *Burger* test for constitutionality of warrantless administrative searches in closely regulated industries. *Hamilton*, 803 F. Supp. at 84-86, *rev'd on other grounds* by *Hamilton v. Lokuta*, 1993 WL 460784 (6th Cir. Nov. 9, 1993). Likewise, in *Smith v. Sundmacher*, the District Court for the Western District of Michigan noted that warrantless inspections authorized by Mich. Comp. Laws § 436.1217(2) are consistent with the closely regulated industry exception. *Smith*, 2006 WL 3091968 at *8 n.7 (W.D. Mich. Oct. 30, 2006). And in *People v. Thomas*, the Michigan Court of Appeals upheld the statute pursuant to Michigan's test for warrantless searches in closely regulated industries, which the Court of Appeals stated is "substantially similar to [the test] adopted by the federal courts." *People v. Thomas*, 201 Mich. App. 111, 116-22, 505 N.W.2d 873, 876-78 (Mich. Ct. App. 1993).

Here, the Court should follow these cases and deem the alleged actions constitutional. Michigan has a substantial governmental interest in regulating the alcoholic beverage industry within its borders. As stated above, this interest derives from the historic police powers of the States, see *Thomas*, 139 S. Ct. at 2463-464, and from the Twenty-First Amendment to the United States Constitution. Further, the Commission investigators' search of Greenbush's licensed premises was necessary to further the regulatory scheme. In the context of closely regulated industries, the Supreme Court recognized that "if inspection is to be effective as a credible deterrent, unannounced, even frequent, inspections are

20

essential." *United States v. Biswell*, 406 U.S. 311, 316 (1972) (holding firearm dealers are subject to warrantless inspections).  If Commission investigators were required to obtain a warrant prior to searching a licensed premises, their ability to ensure compliance, uncover violations and deter further violations would be jeopardized and would have an overall chilling effect on liquor enforcement in the State of Michigan.

Applying the final *Burger* criteria, Mich. Comp. Laws § 436.1217(2) provides a constitutionally adequate substitute for a warrant.  Section 217(2) of the Code, Mich. Comp. Laws § 436.1217(2), requires licensees to make their licensed premises available for inspection "by a [C]ommission investigator or law enforcement officer empowered to enforce the [C]ommission's rules and this act during regular business hours or when the licensed premises are occupied by the licensee or a clerk, servant, agent, or employee of the licensee."  Where "evidence of a violation" is discovered, Mich. Comp. Laws § 436.1217(2) authorizes commission investigators to "seize[]" such evidence.

Plaintiffs mistakenly assert that Mich. Comp. Laws § 436.1235 required Commission investigators to secure a search warrant before impounding Greenbush's wine and cider.  (Pl's Compl. ¶ 112.)  But, by its plain language, Mich. Comp. Laws § 436.1235 only applies to "officer[s]" pursuant to their investigations "in accordance with the code of criminal procedure . . . MCL 760.1 to 776.21."  By contrast, Commission investigators do not enforce the penal laws of the State of

Michigan, and do not act in accordance with the code of criminal procedure. Because the investigation at Greenbush is an administrative matter, Mich. Comp. Laws § 436.1235 is inapplicable.

Accordingly, the inspection by Commission investigators and impounding of wine and cider pursuant to that inspection did not violate Plaintiffs' Fourth Amendment rights and the claim should be dismissed.

## V.    *Younger* abstention and failure to exhaust administrative remedies precludes Greenbush from litigating this dispute in federal court.

Alternatively, the Court may dismiss Greenbush's claims pursuant to *Younger* abstention and failure to exhaust administrative remedies. Under these doctrines, this Court should decline to address Greenbush's alleged claims and instead allow the state administrative hearing process to properly run its course.

### A.    *Younger* abstention bars Greenbush's claims.

The Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny provide that federal courts should abstain from hearing a case when a person is the target of an ongoing state action involving important state interests. *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998). In such scenarios, "a party cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case." *Coles v. Granville*, 448 F.3d 853, 865-66 (6th Cir. 2006). The Supreme Court extended the principles of *Younger* abstention to state administrative proceedings

in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim. *Ohio Civil Rights Ass'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986).

*Younger* abstention is appropriate here because of the pending administrative proceeding involving Greenbush. The Commission filed an administrative complaint against Greenbush on July 30, 2019, based on the Commission's June 19, 2019 inspection. (Ex. 2.) Additionally, the regulation of alcohol is an important state interest that is furthered by the Commission's administrative proceedings. See *Thomas*, 139 S. Ct. at 2463-464; Mich. Const. 1963 art. IV § 40; U.S. Const. amend. XXI. Michigan law also provides Greenbush an opportunity to raise its constitutional challenges through an appeal to the state court. See *Blue Cross & Blue Shield of Mich. v. Baerwaldt*, 726 F.3d 296, 300 (6th Cir. 1984) (applying *Younger* abstention due, in part, to Michigan's agency appeal provisions in Mich. Comp. Laws § 24.306(1)(a)).

## B. Greenbush's claims are barred by its failure to exhaust administrative remedies.

Relatedly, the Court may dismiss Greenbush's claims because Greenbush has failed to exhaust its administrative remedies. Exhaustion of administrative remedies is "well established in the jurisprudence of administrative law," *McKart v. United States*, 395 U.S. 185, 193 (1969). It is normally desirable to let the agency develop the factual background and give the agency the first chance to apply its

expertise over the subject matter.  *Id.* at 193-94.  Here, the Commission's administrative procedures will allow the Commission to hear the facts, analyze the statutes it enforces in light of those facts, and apply its expertise.  See Mich. Admin. Code, R. 436.1909.  Addressing what constitutes manufacturing should be first addressed by the agency and hearing officers that specialize in that regulatory system.  Allowing the administrative process to proceed will also allow the Commission to correct any mistakes prior to federal court intervention.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, the Defendants request that the Court dismiss Plaintiffs' Complaint in its entirety, award costs and fees, and grant the Commission such further relief as the Court deems appropriate.

Respectfully submitted,

Dana Nessel
Attorney General

/s/ Adam M. Leyton
Jason A. Geissler (P69322)
Felepe H. Hall (P59533)
Assistant Attorneys General
Attorneys for Defendants
Alcohol & Gambling Enforcement Div.
525 W. Ottawa St., 1st Floor
Lansing, MI, 48933
(517) 241-0210
Leytona1@michigan.gov
P80646

Dated:  August 1, 2019

## CERTIFICATE OF COMPLIANCE

Pursuant to LCivR 7.2(b)(ii)

1.     This brief complies with the word count limitation of LCivR 7.2(b)(i) because, excluding the part of the document exempted by LCivR 7.2(b)(i), this brief contains no more than 10,800 words.  This document contains 6,478 words.

2.     This word count was generated using Word in Microsoft Office 365 ProPlus, version 1902.