UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREENBUSH BREWING CO., et al., )
        Plaintiffs, )
           )   No. 1:19-cv-536
-v- )
           )   Honorable Paul L. Maloney
MICHIGAN LIQUOR CONTROL COMMISSION, )
et al., )
        Defendants. )
_____)

## OPINION

This matter is before the Court on Defendants' motion to dismiss (ECF No. 17). The Court has had the benefit of standard and supplemental briefing on the issue (*See* ECF Nos. 18, 21, 23, 57, 58). For the reasons to be explained, the motion will be granted.

## I.

This case is effectively a dispute about what it means to "manufacture" wine under Michigan law, and in turn, who may enjoy the benefits of Michigan's various wine manufacturing licenses. In Michigan, "small wine maker" licenses allow licensees to manufacture not more than 50,000 gallons of wine per year and sell that wine to wholesalers, retailers, consumers by direct shipment, and at retail on the licensed winery premises such as tasting rooms. MCL § 436.1111(12); MCL § 436.1113(10). Small wine maker licenses cost $25 and are not subject to Michigan's Liquor License quota. MCL § 436.1525(1)(d). However, small wine maker licenses do not allow licensees to sell wine manufactured by other wineries: To sell wine or beer manufactured and bottled off-site, a licensee needs a tavern license. MCL § 436.1113a(2). Tavern licenses are limited by Michigan's Liquor

License quota, which is based on population in local geographic units. MCL § 436.1531(1).

Thus, tavern licenses are usually only obtainable by transfer from another party.

In December 2018, the Michigan Legislature placed restrictions on bonded transfers of wine for wine makers and small wine makers. MCL § 436.1204a provides, in relevant part:

> (1) A manufacturer shall not sell or transfer alcoholic liquor to a licensed manufacturer in this state except as provided in subsections (2) and (3).
>
> (2) Notwithstanding any provision in this act to the contrary, a manufacturer may sell or transfer wine or spirits to a licensed manufacturer, and a licensed manufacturer may purchase or receive wine or spirits, under any of the following conditions:
>
> (a) For a sale or transfer of wine:
>
> (*i*) The selling or transferring manufacturer is a wine maker, small wine maker, or out-of-state entity that is the substantial equivalent of a wine maker or small wine maker and is selling or transferring the wine to a wine maker, small wine maker, or out-of-state entity that is the substantial equivalent of a wine maker or small wine maker.
>
> (*ii*) The purchasing or receiving wine maker or small wine maker manufactures wine at its licensed premises or the purchasing or receiving small wine maker bottles wine at its licensed premises.
>
>                     * * *
>
> (3) A wine maker, small wine maker, distiller, or small distiller may not sell alcoholic liquor purchased or received under this section unless 1 of the following conditions is met:
>
> (a) The purchasing or receiving manufacturer modifies the purchased or received alcoholic liquor by performing a portion of the manufacturing process as described in section 109(1).
>
> (b) The purchasing or receiving small wine maker bottles the purchased or received wine.
>
> (c) The purchasing or receiving wine maker or small wine maker is selling a shiner[1] on which the wine maker or small wine maker has placed a label under section 111(10).
>
> (4) This section does not prevent a manufacturer from selling, purchasing, or receiving nonalcoholic ingredients to or from another manufacturer.

---

[1] A "shiner" is an unlabeled sealed container of wine that the purchasing wine maker must label before selling. MCL § 436.1111(10).

The Michigan Legislature also amended the definition of "manufacture" to read:

> "Manufacture" means to distill, rectify, ferment, brew, make, produce, filter, mix, concoct, process, or blend an alcoholic liquor or to complete a portion of 1 or more of these activities. Manufacture does not include bottling or the mixing or other preparation of drinks for serving by those persons authorized under this act to serve alcoholic liquor for consumption on the licensed premises. In addition, manufacture does not include attaching a label to a shiner. All containers or packages of alcoholic liquor must state clearly the name, city, and state of the bottler.

MCL § 436.1109(1). Essentially, the Legislature now allows a purchasing small wine maker to sell bonded wine for consumption only if it has modified the bonded wine by performing part of the manufacturing process on it or if it has bottled the bonded wine. Small wine makers may also receive unlabeled sealed bottles of wine called "shiners," label them, and sell them.

Plaintiff Greenbush Brewing Company holds both a microbrewer license and a small wine maker license. Greenbush operates a tasting room on its licensed premises in Sawyer, Michigan. At some point, the Michigan Liquor Control Commission ("MLCC") became aware that Greenbush possessed and offered for sale unaltered wine and cider. On June 19, 2019, Defendants and MLCC employees Kurt Cox and Jon Reeder investigated Greenbush's premises. They spoke with Greenbush's Director of Operations, Anna Rafalski, and Brewer, Joseph Hinman. The investigators asked Rafalski and Hinman how Greenbush manufactured wine and cider; Rafalski explained that Greenbush only manufactured beer on the premises. The investigators also asked about the wine and cider stored on the premises. Rafalski stated that Greenbush possessed wine produced by Fenn Valley Vineyards, which it received in unlabeled shiner bottles or 1/6-barrel kegs.  Greenbush

did not label the shiners. Rafalski also stated that Greenbush's cider was manufactured by Vander Mill, which shipped cider to Greenbush in 1/2-barrel kegs. Cox and Reeder requested copies of any federally required filings regarding wine production, but Rafalski conceded that no such forms were available.

Based on that investigation, Cox and Reeder determined that Greenbush was in violation of MCL § 436.1204a. The MLCC Agents seized and impounded all wine and cider on Greenbush's property and informed Greenbush that it could no longer sell wine or cider. At Greenbush's request, Reeder and Cox left for a short time so that Greenbush could move the wine and cider into cold storage. When Reeder and Cox returned, Rafalski had spoken with Greenbush's counsel, and she informed the investigators that Greenbush did, in fact, produce wine and cider at the brewery. Rafalski explained that Greenbush had made sangria from bonded wine and that Greenbush had attempted to brew cider. This information did not change Cox and Reeder's conclusion that Greenbush was violating the new Michigan statute, so they filed a violation report and submitted it to the MLCC.

Before the administrative process on that violation report began, Plaintiffs filed this lawsuit, asking this Court to declare MCL § 436.1204a and MCL § 436.1109(1) unconstitutional, and sought the return of the impounded inventory. Plaintiffs moved for a temporary restraining order and a preliminary injunction. This Court denied Plaintiffs' request for a temporary restraining order (ECF No. 13) and after a hearing, denied the request for a preliminary injunction (ECF No. 24). Instead, the Court ordered Defendants to hold an administrative hearing by December 10, 2019 and to issue a final decision no later

4

than January 24, 2020, so that Plaintiffs would receive guidance on the meaning of the relevant Michigan statutes (*Id.*).

But instead of pursuing that administrative process, Greenbush settled with the MLCC on November 19, 2019, before appearing at any scheduled hearing on the matter. Greenbush maintains that it did so under duress because Defendants threatened to revoke both of its liquor licenses—not just the disputed small wine maker license, but also its microbrewer license. Faced with the prospect of losing both licenses, Greenbush chose to admit that it had violated Michigan law, pay $150 for each violation, and place its small winemaker license into escrow. As part of the settlement, Greenbush waived its right to appeal the decision, either administratively or to the Michigan courts. (*See* MLCC Order Adopting Settlement, ECF No. 33-2.)

Three days later, on November 22, 2019, MLCC issued an administrative complaint against plaintiff Vander Mill, alleging that it had engaged in similar violations of Michigan law related to the inspection at Greenbush's premises. That matter was scheduled to be heard before an administrative law judge on March 30, 2020, but it has been rescheduled to an undetermined future date due to the ongoing coronavirus pandemic.

On December 20, 2019, MLCC issued an order authorizing the release and return of the wine and kegs seized from Greenbush. At some point (presumably around the same time), "Greenbush requested, and MLCC approved, removal of one of the Small Wine Maker licenses from escrow and MLCC has inspected and approved Greenbush's current winery operation." (ECF No. 57 at PageID.1262.)

The matter is now before the Court on Defendants' motion to dismiss the complaint, which was filed before the Court decided the motion for preliminary injunction (ECF No. 17). Given the interim events, the Court ordered the parties to submit supplemental briefing on the issue of administrative exhaustion (ECF No. 46).

## II.

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations

omitted). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. For Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to prove the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## III.

### A.

Plaintiff Greenbush will be dismissed from this lawsuit for failure to exhaust its available administrative remedies. Generally, a party must exhaust administrative remedies before seeking judicial review. MCL § 24.301; *see also L & L Wine & Liquor Corp. v. Liquor Control Comm'n*, 733 N.W.2d 107, 111 (Mich. Ct. App. 2007). The requirement to exhaust administrative remedies is "well established in the jurisprudence of administrative law," *McKart v. United States*, 395 U.S. 185, 193 (1969), and may be waived only in a few narrow circumstances. If it is "*clear* that an appeal to an administrative board is an exercise in futility and nothing more than a formal step on the way to the courthouse," then exhaustion is not required. *L & L Wine*, 733 N.W.2d at 111 (quoting *Manor House Apartments v. City of*

*Warren*, 516 N.W.2d 530, 531 (1994)). Similarly, if the agency's final decision cannot provide an adequate remedy, exhaustion is not required. *Id.* at 112. Finally, if the party will suffer irreparable harm while waiting for the administrative hearing, it is not required to exhaust administrative remedies. *Consumers Power Co. v. Michigan Public Serv. Comm'n*, 327 N.W.2d 875, 882-3 (Mich. 1982).

The MLCC has "exclusive jurisdiction" to issue declaratory rulings over issues involving the traffic of alcoholic beverages. *L & L Wine*, 733 N.W.2d at 111. Failure to proceed through the administrative hearing and create a record before seeking judicial intervention is a failure to exhaust the relevant administrative remedies. *Id.* In this case, it is undisputed that Greenbush did not proceed through a hearing. None of the three exceptions outlined above excuse this failure to exhaust, so Greenbush must be dismissed.

First, Greenbush has not shown that the hearing would be futile. There is no record evidence to shows that the MLCC would have certainly found against Greenbush; to the contrary, all Greenbush had to provide was evidence that it was manufacturing wine. Greenbush has provided that evidence: Since the administrative matter settled, "MLCC has inspected and approved Greenbush's current winery operation." (ECF No. 57 at PageID.1262.) Therefore, it appears that Greenbush would have been successful at the administrative hearing if they had simply presented this evidence *at* the hearing rather than after it. Therefore, the administrative hearing would not have been simply "a formal step on the way to the courthouse." *Id.* Greenbush may have succeeded at the administrative hearing, so the hearing would not have been futile.

8

Second, while the MLCC itself could not provide an adequate remedy on Greenbush's constitutional claims, the administrative process does provide an adequate remedy. Plaintiffs argue that cases presenting pure questions of law may forgo the administrative route, but acknowledge that cases presenting mixed questions of fact and law are appropriate for deferment to the MLCC for an administrative hearing, allowing the MLCC to create a record (*See* ECF No. 57 at PageID.1268). That is exactly the type of case Plaintiffs present here: the MLCC needed to make findings of fact to determine whether Plaintiffs were acting within the bounds of Michigan law. If they were not, Plaintiffs would presumably bring their constitutional challenge on appeal. The Michigan courts are empowered to set aside administrative decisions that are unconstitutional, so the appeals process "provides an ample opportunity for [Plaintiff] to raise its constitutional claims." *Blue Cross and Blue Shield of Michigan v. Baerwaldt*, 726 F.2d 296, 300 (6th Cir. 1984). Thus, the administrative process would have provided an adequate remedy.

Third and finally, Greenbush has not shown that it would suffer irreparable harm because of the administrative process. Greenbush argues that the threat of having all its licenses revoked was irreparable harm, but the MLCC retains discretionary power to revoke liquor licenses. *See* MCL § 436.1903(1) ("The commission . . . on notice and proper hearing, may suspend or revoke any license on a violation of this act or any of the rules promulgated by the commission under this act."). Greenbush alleges that the MLCC does not revoke liquor licenses often and argues that their alleged violation of MCL § 436.1204a is far from the type of egregious violation that typically results in license revocation. But the statutory language clearly places discretion regarding revocation in the MLCC's hands when there is

9

any violation, not just the most egregious violations. *See id.* Therefore, the "irreparable harm" that Greenbush challenges here is the exercise of that discretion. That harm is tenuous and uncertain, particularly given that Greenbush would not have suffered *any* harm if it provided the requested proof, which it has since done. Finally, it is not a forgone conclusion that Greenbush would have had all its licenses revoked; the punishment was requested by the MLCC but ultimately would be imposed by the presiding administrative law judge ("ALJ"), if he felt it appropriate. Greenbush's failure to exhaust administrative remedies cannot be excused for threat of irreparable harm. Thus, its two statutory claims (Counts I and II) must be dismissed.

Greenbush's Fourth Amendment claim (Count III) is moot. Greenbush seeks the return of its property, but that property was returned on December 20, 2019. As such, this count is moot and will be dismissed. *See Gen. Motors Leasing Corp. v. United States*, 429 U.S. 338, 359 (1977) (holding that a claim seeking the return of books and records was moot when the items had been returned by the time the case was adjudicated).

## B.

Similarly, Plaintiffs Vander Mill's claims must be dismissed under the *Younger*[2] abstention doctrine. "Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723 (1996). *Younger* requires federal courts to abstain where: (1) state proceedings are pending; (2) the state proceedings involve an

---

[2] *Younger v. Harris,* 401 U.S. 37 (1971).

important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989).

On the first element, state proceedings are pending if they are filed before any proceedings of substance on the merits occur in federal court. *Hicks v. Miranda*, 422 U.S. 332, 349 (1975). The denial of a TRO is not a proceeding of substance. *Id.* at 338, 439. However, the denial of a preliminary injunction, when coupled with an "extended evidentiary hearing," can constitute "a proceeding of substance on the merits." *See, e.g., Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350-51 (9th Cir. 1985). In this case, the administrative complaint against Vander Mill was not filed until November 22, 2019. But by that date, the only "proceeding" that had occurred in this Court was an oral argument on the preliminary injunction (but not a thorough evidentiary hearing), and the denial of that motion. There had been some motion practice and discovery had begun, but the Court had ordered Greenbush to proceed through the administrative process before ruling on the merits of the case. This case was effectively paused for the administrative process to proceed, and the Court concludes that no decisions on the merits of the case had been made.

A related concern is whether the state proceedings are "judicial in nature." The administrative process will give Vander Mill an opportunity to present its case before an ALJ, including the opportunity to present evidence and cross-examine witnesses. MCL §§ 24.271-24.272, 24.276; Mich. Admin. Code R. 436.1909(2). The rules of evidence would largely apply to this hearing. MCL § 24.275. Vander Mill has the right to be represented by counsel at the hearing. Mich. Admin. Code. R. 436.1905(6). Vander Mill is also entitled to an

11

administrative rehearing, administrative appeal, and then the opportunity to appeal to the Michigan Courts, which are obviously judicial bodies. Mich. Admin. Code R.436.1917; MCL §§ 24.301, 24.306. Thus, the Court finds that the first element is satisfied.

Regarding the second element, the Twenty-First Amendment gives states broad authority over "[t]he transportation or importation [of intoxicating liquors] into any State, Territory, or possession of the United States for delivery or use therein." U.S. Const. amend. XXI, § 2. The MLCC has the sole right, power, and duty to control alcoholic beverage traffic in the state. MCL § 436.1201(2). Thus, the regulation of alcohol is an important state interest. *See also Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2463-464 (2019). Thus, the issues presented in the case are important state interests, and the second element is satisfied.

Finally, the administrative proceeding itself does not afford Vander Mill an opportunity to raise the constitutional issues, but the appeals process through the Michigan Court of Appeals and the Michigan Supreme Court do. As above, the appeals process "provides an ample opportunity for [Plaintiff] to raise its constitutional claims" in the state court proceeding. *Baerwaldt*, 725 F.2d at 300.

Therefore, all three elements of *Younger* abstention are met, so the Court must abstain and let the Michigan administrative process handle Vander Mill's claims regarding the state statutes. And, as with Greenbush, Vander Mill's Fourth Amendment claim is moot because the requested property was returned on December 20, 2019.

## C.

Having concluded that the two main plaintiffs must be dismissed, only Farmhaus Cider Company and the Michigan Cider Association ("MCA") remain. These plaintiffs do not have constitutional standing to bring this case.

A plaintiff is required to show standing to sue at each stage in the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). To establish standing under the Constitution, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014) (citing *Lujan, id.*).

Nothing in the complaint alleges that Farmhaus or MCA have suffered any concrete and particularized injury in fact. Regarding MCA, the complaint only alleges that MCA's members have seen decreased sales as a result of the new statutes (Complaint, ECF No. 1 at ¶ 74, 107). The allegation is vague and does not connect to any actions taken by Defendants,[3] nor does it show an injury to MCA itself. Thus, MCA does not have standing to bring any claims.

---

[3] Plaintiffs acknowledge that they cannot maintain a suit against the MLCC itself because, as an arm of the state, the MLCC has Eleventh Amendment immunity (ECF No. 21 at p. 11 n.7). Therefore, the Court only considers the individual Defendants' actions, and the complaint does not allege that Andrew Deloney, Cox, and/or Reeder took *any* actions related to or affecting MCA.

13

Regarding Farmhaus: the only allegation about Farmhaus comes near the end of the complaint, where Plaintiffs allege that Farmhaus had property improperly seized by Defendants. However, there are no facts about this seizure; it appears that Farmhaus may have transferred wine in bond to Greenbush that was seized in the June 19, 2019, inspection. However, it does not appear that seizure caused Farmhaus any injury: Greenbush purchased wine from Farmhaus, and Greenbush was injured when that wine was seized before it could be sold. Farmhaus was not injured because it sold the bonded wine to Greenbush—it no longer had ownership of the wine, and the wine appears to have been paid for. Therefore, Farmhaus does not appear to have been injured in any way by the MLCC's actions. Like MCA, Farmhaus does not have standing to bring the remaining constitutional claims.

## IV.

For these reasons, the Court concludes that Greenbush failed to exhaust its administrative remedies; that the Court must abstain from hearing Vander Mill's claims; and that the remaining plaintiffs lack standing to bring the case. Given these conclusions, the Court need not reach the merits of Plaintiffs' constitutional claims. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 17) is **GRANTED**.

Judgment to follow.

**IT IS SO ORDERED.**

Date:  July 6, 2020                                             /s/ Paul L. Maloney
                                                                Paul L. Maloney
                                                                United States District Judge